### In re A. O. BROWN & CO.

#### Appeal of HOCHSTADTER.

(Circuit Court of Appeals, Second Circuit.    March 10, 1913.)

#### No. 185.

BANKRUPTCY (§ 409*)—DISCHARGE—OBJECTIONS—BOOKS OF ACCOUNT.

Where bankrupts, who were stockbrokers, kept certain individual accounts of customers in their general ledger by number, but kept other records from which the accounts might be readily identified, and it also

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

appeared that a numbered account covered speculative transactions of the firm and was readily identified, the bankrupts had not failed to keep books of accounts or records from which their condition might be ascertained with intent to conceal their financial condition and could not therefore be lawfully deprived of a discharge on that ground.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 739, 752–757; Dec. Dig. § 409.*]

Appeal from the District Court of the United States for the Southern District of New York; Julius M. Mayer, Judge.

In the matter of the bankruptcy proceeding of A. O. Brown & Co. From an order overruling specifications of objection of Leonard A. Hochstadter to bankrupt's discharge, he appeals. Bankrupt's application granted so far as Albert O. Brown and Lewis G. Young, individually, were concerned, and objector appeals: Affirmed.

See, also, 193 Fed. 24, 113 C. C. A. 348; 193 Fed. 30, 113 C. C. A. 354.

Kendall & Herzog, of New York City (D. W. Kahn and Irving L. Ernst, both of New York City, of counsel), for appellant.

R. P. Levis, of New York City, for appellee.

Dix W. Noel, of New York City, for A. O. Brown.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge. The sole ground of objection was under subdivision 2 of section 14b (Act July 1, 1898, c. 541, 30 Stat. 550 [U. S. Comp. St. 1901, p. 3427]); it being alleged that the bankrupts applying for discharge, "with intent to conceal (bankrupts') financial condition, * * * failed to keep books of accounts or records from which such condition might be ascertained."

The bankrupts were a firm of stockbrokers. Their books of accounts were kept by a thoroughly competent bookkeeper with assistants, and so far as appears the various entries which represent the transactions occurring in the conduct of the business of the firm were correctly recorded in such books. What is mainly complained of is that such books did not in all cases contain the names of the bankrupts' customers. Customers' accounts with a firm are usually kept in ledgers, each customer having a folio allotted to him, and such accounts are usually headed each with the name of the customer. In the stock business where customers buy and sell stocks through brokers, it is not unusual, when a customer so wishes, to arrange the entitling of his account, so that the numerous clerks to whom the general ledgers are accessible may not learn the names of the individuals who are operating through the broker in some particular stocks. This is usually done by heading the ledger account with a number instead of a name. Thus the account of William Smith may appear in the ledger as "Account No. 53," and the account of George Jones as "Account of No. 127." The accounts of very many of the customers of A. O. Brown & Co. were thus kept in their general ledgers. It may be questioned whether this method of keeping these accounts does operate to conceal the financial condition of the firm. When the books are examined at any time it will appear from them how much is due

from the firm to customers and how much is due from customers to the firm. Striking a balance between these two sums will disclose, so far as dealings with customers are concerned, whether the firm is on the whole a creditor or a debtor, and it would seem to do this whether, the customers are described by name or number. But passing this, it appears from the testimony that, whenever at a customer's request these bankrupts kept his account under a number, they took from him a power of attorney or a letter of instructions which identified the signer as the individual whose accounts were kept under such number. Of course, these documents were not left lying open in the office for the clerks to overhaul and read; that would have defeated the object sought to be obtained by keeping numbered accounts. But they were kept safely so that the brokers might have them in the event of future controversy with some customers. They were kept among the other records of the firm and when bankruptcy came were turned over with all the books and records of the firm to the receiver or trustee. It is manifest that with these documents and the general ledgers before him any intelligent bookkeeper could ascertain whose transactions it was that the entries in a numbered account referred to. The language of the statute relied on and above quoted is suggestive. It does not speak of a failure to keep *books* of account, but of a failure to keep books of account *or records* from which their financial condition might be ascertained. Inasmuch as we have here records which establish the identity of all the numbered customers' accounts there is no force in the objection that such accounts were headed in the books with a number only, "with intent to conceal bankrupts' financial condition."

There is another numbered account of a different character. It is known as "Account No. 2" and records various speculative purchases and sales of stock by the four members of the firm. Of such an account it cannot be said, as it might be of a customer's account, that the financial condition of the firm could be ascertained whether it was headed with number or name. If a customer's account showed a debit balance, it would indicate an asset of the brokers, viz., the amount due from the customer. But if a firm account showed a debit balance, it would be a liability of the firm. Therefore there would be a concealment of financial condition unless a competent person examining the books and records would ascertain that "Account No. 2" recorded the transactions of the members of the firm.

The appellees contend with much force that the character of "Account No. 2," viz., that it was a firm account, would be manifest upon inspection. It was not kept in the general ledger, but in a private ledger which was kept locked, i. e., the covers of the book were locked and the confidential bookkeeper kept the key. The other accounts which were kept in this ledger were the capital accounts of the several partners, the expense account, profit and loss account, and commission account. Account No. 2 itself indicated that the money which, by way of margin, opened it was transferred from the cash loan account. From time to time each of the four partners drew out of this account No. 2, and the amount he so drew out was credited to his personal capital account. The confidential bookkeeper who kept it, assumed from the nature of the entries that it was a firm account. He sup-

posed the firm was "bucketing," buying and selling against its own customers; but, whether it was or not, he had no doubt that this No. 2 was a firm account, and says that other of the clerks who had access to it so spoke of it. Even the accountant called by the appellant, whose testimony is not especially persuasive—even the District Judge had difficulty in getting positive answers out of him—admitted finally that the account was evidently not that of an outsider, although he says that *he* could not tell whether it covered transactions of the firm or of an individual member. Why he could not determine this, when it appeared that all four members drew from it, he did not make clear. We think the character of the account was such that the heading it with a number only did not conceal its identity.

It further appeared that by their articles of copartnership the members of the firm agreed that none of them would speculate, except upon written agreement of all. At the time this account was opened they made such a written agreement, profit or loss to be divided equally between them, and in such agreement directed the account of such transactions should be opened on the books "to be known as account No. 2." This agreement remained among the records of the firm and passed with all the books and records to the trustee. From this record and the books, the identity of this account could be ascertained.

There are some other accounts referred to which we need not discuss at length. One was opened in the name of George Considine. This was done by direction of Buchanan, the member of the firm who attended to the office; A. O. Brown and Young being the floor members of the firm on the Stock Exchange. Buchanan expected after making a few operations on this account that it would be so attractive that he could persuade Considine to assume it. This Considine would not do; whereupon Buchanan had it transferred to Mary A. Teddes, his stepmother, and continued to operate under it. We do not think it necessary to add anything to what was said by the special master and the District Judge in reference to these accounts and a few others specified by appellant. They refused a discharge to Buchanan and granted one to A. O. Brown and Young. In these conclusions we concur.

The order is affirmed.